171462 United States v. Roger Belanger Good morning, Joseph Simons for Mr. Belanger. Chief Judge Howard, may I reserve two minutes for rebuttal? Yes, and maybe you should pull the mic up just a little. Thank you. Your Honor, this case is a conviction that stemmed largely from testimony that the government relied on co-conspirators who were drug addicts, who were people who had cut a deal for themselves to keep themselves out of lengthy federal prison terms. And there are four main points of contention that I'd like to address. The first is that the trial court allowed a lay witness, an agent Buchanan, to testify as to phone calls. There were a number of phone calls, but Mr. Belanger had objected to the agent identifying the stuff as cocaine or wheels as cocaine. And I think eventually the trial court had allowed Agent Buchanan to testify that in the past he had heard of the stuff referring to cocaine in his experience and training. And the wheels might have meant cocaine, might have meant oxycodone, but not in this case. And if Agent Buchanan wasn't able to testify that those terms meant cocaine or something specific in this case, then it was irrelevant. And the government tried to lay a foundation subsequent to some objection, but Mr. Belanger asserts there was not a proper And second, that there was no necessity to that commentary. It was effectively a running commentary where the prosecutor would ask Agent Buchanan, what happened in this call, what does this mean? And he would explain as the tapes were being played what he believed that was what the participants were saying. In fact, with regard to wheels, there was a mechanic that he actually repaired people's cars. And so the agent testified that he couldn't say for sure whether or not wheels meant actual wheels on a car or some sort of drugs that were being attributed to Belanger and his co-defendants. The second issue Well, the co-defendant objected, but your client's attorney did not object. Isn't that correct, to the wheels comment? Yes, Judge Thompson, I believe you're right. To that specific comment, the co-defendant had objected. Even without the objection, though, Mr. Belanger would still assert that there was Plain air? Yes. To the second point Well, didn't some of the co-defendants also testify about the meaning of wheels? They did, but with regard to Agent Buchanan, he was somebody who I believe the jury would view as more authoritative, someone more trustworthy, somebody who had really no stake in the game. He was an independent witness. He was law enforcement, but he had testified about his training. He had testified But the people involved in the conspiracy know what they're meaning when they use the how that would be prejudicial, given the other testimony in the record. Well, I think the extent to which the jury could have viewed the agent's testimony was on such another level than the co-defendants in their testimony, because there was so much to be desired, I think, in terms of their credibility. I think they were all involved. They were all criminals. They were just on a different level than Agent Buchanan, and I think that it rises to a plain air level when the only independent person testifying about this is cloaked with such authority and allowed to just go on and on about what he believes, even though there's no foundation, I would ask that the court find plain air with respect to that issue. You said you had four issues. What are the others? Thank you. The trial court denied a jury instruction based on regarding multiple conspiracies in this case. What was the evidence of multiple conspiracies? The trial judge said it's pretty plain. We've got one conspiracy lasting over a period of time. Well, there was certainly evidence that Mr. Belanger had withdrawn from the conspiracy. No, there wasn't. Okay, it's a subsidiary argument to this one. What is the evidence of withdrawal? The evidence of withdrawal, there were, I believe, two governments. He doesn't disavow, he doesn't go to the government, and he resumes activities as soon as he gets back into Maine. There's evidence that Mr. Belanger told his co-defendants, at least some of them, that he had moved to California to get away from drugs, to start a new life, and I would argue that those statements, even if they don't specifically say, I'm leaving the conspiracy, would be enough to essentially mean that. I'm leaving, I'm starting a new life, I'm getting away from drugs, and if that's what the conspiracy is based on, I'd say that that's enough, but also the length of time he was gone, depending on which government witness the court would rely on, he was gone from about 2005 to somewhere between 2009 or 2014. Is there anything in the record about any contacts he had with his daughter during that period? Not that I can recall off the top of my head, but I do know there was some, well, I guess one is that he was across the country, and two, Mr. Belanger, I mean, there was no testimony or evidence that he was somehow still involved, and actually, I believe there was testimony by at least one government witness that he was procuring drugs from somebody who had been a competitor and had nothing to do with Mr. Belanger, and wasn't someone that he had been connected to through Belanger. Essentially, if there was still drug dealing and trafficking going on, which I can see that there was, it wasn't with Mr. Belanger, and that any sort of subsequent involvement by Mr. Belanger would have been a new conspiracy. Years later, like I said, somewhere between four and nine years later, depending on which government witness you believe, and I believe there's a subsequent basis for the jury instruction proposed. Well, one witness testified that he was leaving because things were getting too hot. Does that, I mean, how are we supposed to interpret that? Does that mean that he was disavowing? I would argue yes. I guess whatever the impetus for him leaving, he left. If things are too hot and he's saying I can't be around here because the police are about to get me and I need to leave, either way, he left the conspiracy. I guess it doesn't matter why, I think the laws, whether he left and whether he communicated that effectively, I don't think there's any specific wording that he has to say I am leaving a conspiracy. But yes, I think that the court should interpret that as a disavowalment in the leaving of the conspiracy before he left for California. I would also argue to that end, the third point is that there's insufficient evidence to support a conviction that Mr. Belanger had left and the conviction was for a single conspiracy and the conspiracy was based on his prior involvement from when he was in Maine before he left for California and the trial court determined that there wasn't a basis for that instruction. So essentially, Mr. Belanger was deprived of having an argument that he disavowed and left. To pick up on Judge Lynch's question, why isn't it a reasonable inference that he didn't disavow since he came back and got actively involved again? Well, he had no involvement. Essentially, that would open the door for somebody to be gone for an unlimited period of time. If he was gone for up to nine years and came back, somebody could be involved 20 years ago and come back and then be a part of the same conspiracy. I think it's indisputable that he was gone and I don't believe there's anything on the record to support that he still had some hand in the conspiracy, the directing or moving or doing anything to further the conspiracy during that time. I think he was gone in those statements such as I'm leaving to start a new life, I'm leaving because I want to get away from drugs or because the police are on to me or it's hot, whatever it is, he made a number of statements to his co-conspirators to say that he was out and he actually took himself out of the state, of the whole eastern part of the United States to get away. The fourth and final point for today I have is that the government made an improper closing argument. They made a very compelling and I would suggest memorable argument with regard to conspiracy akin to being on a train. The government attorney told the jury that Belanger was on a train and the train represented the conspiracy. And to get off the conspiracy to stop the train you have to derail the train. And the government attorney suggested, told the jury that you have to either die or notify law enforcement and disavow. And it was an improper statement. You don't have to tell law enforcement and disavow the conspiracy. It's enough that he disavowed the conspiracy which I'm arguing that he did. The government said, as an example, you have to go to Agent Buchanan and you have to say Paul, I want you to help me arrest these people who I've been working with and that Belanger didn't do that. And as a result, then Belanger didn't disavow the conspiracy. But that's a misstatement of the law. It's misleading to the jury. And it was one of the last things that the jury heard prior to the judge's closing instructions. It was something that also the government agent, the government referred to the agent as Paul. I suppose that goes to my first argument as far as the lay witness testifying and being cloaked with some sort of authority. Not only is he a law enforcement authority and able to... Our counsel, there was no objection made, correct? So this is on plain error review? That's right, it is. And I would argue that the extent to which the conduct was recurrent and deliberate, I don't know that I can say it was recurrent, but I'd say that it was a deliberate statement. It was something that is material to the jury's consideration as to whether somebody withdrew from a conspiracy. If they're told by the government during the closing argument that somebody has to notify law enforcement, I suggest that's a memorable thing. They've heard extensively... Isn't there another mitigating fact, and that is that the judge gave a proper instruction about withdrawal? In fact, wasn't it the instruction that Mr. Belanger wanted? It was an instruction that Mr. Belanger wanted. I would suggest, though, still, given the context and the third element, I think, of plain error as far as the strength of the prosecution's case, you know, without this agent testifying, I think the case is largely based on people who have a lot to gain by testifying against Mr. Belanger, and the government's case isn't so strong to overcome all the issues that were raised on the brief. But all that was argued to the jury. The weakness of the prosecution witnesses. It was, but I would suggest that one of the last things that the jury heard was the government's admonition that Mr. Belanger didn't either die or tell Agent Buchanan to arrest his co-conspirators. So, thank you. Good morning, Your Honor. May it please the Court, Renee Bunker on behalf of the United States. I'll quickly address the closing argument. Before you address, can I just ask you something, because it's done differently depending on who the judge is. In this case, did the judge instruct before closing arguments or after? That's where I was going to go. Oh, okay. The last thing that the, first of all, in rebuttal, the prosecutor summarized, said there are two ways you can get off this conspiracy. Two people did die during this conspiracy, so that was probably Snow and LaFountain had already died. You can do as they did. You can die or you can do as they did. He's alive. He's a defendant in the case. He hasn't died. What's that got to do with anything? I'll get to the derail part, but he's to which neither attorney objected to. The prosecutor then, he actually did, contrary to the opponent's perspective, the prosecutor said that to derail the train, you do it by going to the other conspirators. Every single one. You say, I'm out. I'm done. I don't want anything else more to do with drugs. You go to the cops. You go to Special Agent Buchanan. You say, I want to help you catch those people. He didn't say and, nor did he say or. He just paused in between these options or possibilities. So at best, there's an ambiguity. And going to Chief Judge, oh, I'm sorry, Judge Thompson, you asked, right after closing arguments, the court instructed, gave the final instructions that included, by the way, an instruction that if what you hear from the lawyers about the law is different than from what I tell you, it's what I instruct that controls. Then they all went to side there at the end of that. And as Chief Judge Howard just pointed out, the court then issued Belanger's request to withdraw the instruction, which mirrored this court's pattern instruction. And again, came after and with no objection from either of the two attorneys there. And no request for clarification as to what the government had meant, whether it was in or for. So with that, we would submit that there's clearly no complaint of error on this record. And I can move to the other issues unless the court has questions. I've got a question. So I'm just trying to figure out, according to the record, he made the statement that he was leaving for California to get away. And there's nothing in the record, I don't believe, that there was contact with the folks back in Maine during that period. I'm just trying to figure out, why isn't that enough? Or are you saying that it was up to the jury to draw whatever inference they wanted from that? A couple of comments. The law says mere cessation of conspiratorial conduct or conduct to further the conspiracy is absolutely not enough for withdrawal. The Supreme Court's law says that. This court's law says that. And so what we have is... I'm trying to figure out, why isn't what happened here disavowal? Or are you saying it could be, but the jury didn't have to buy it? I would submit that it's way too ambiguous, given the strength and the significant burden I'm required for this withdrawal defense. All he has is two witnesses saying he left in about 2005. We have one witness who said, Beckwith said that... Those are things he had done to Singapore. I don't think it would have made a difference, because passive cessation of the criminal conduct and furtherance of the conspiracy is clearly insufficient. So all we have is him saying to Beckwith, or Beckwith recalling he said he was going to try and straighten out his life. That certainly doesn't create two conspiracies. Nor does it say anything about whether Belanger wanted the goals of his family enterprise to continue in his absence. And then both, I think, Judge Flinch and you, Judge Thompson, I think, went to the kind... So whether the fact that he came back and dove full stream ahead, when he came back, whether it was in 2008, as Thompson recalled, or 2010, as Beckwith recalled, or 2012, as folks are wiring him money in Rhode Island to get drugs that was Big U and Mark Tasker wiring him $300 by March of 2012. Anyway, I noted this court in Sulisi looks to the full context of the defendant's conduct to see whether he approved an actual withdrawal from the conspiracy, be it under the defeat or disavow prongs there. And the court looking at his conduct after the ambiguous statements about whether he was out or whether he was not going down with whatever was going down. Looking at the full context of the conduct, I think when you look at the fact that Mr. Belanger came back and was aspiring in drug trafficking, we have not just two sort of random players. We have seven long-term significant drug conspirators. You have Belanger, who's totally trafficking with some of these folks in 2001, 2002. You have John Williams, comes in in 2001, trafficking with Belanger, Bob Fountain, David Snow. You have Big U, comes in in 2002, by then he's already doing multiple ounces with Belanger. You have Thompson, comes in in about 2004, 2005, dealing drugs with Belanger. You have Beckwith, comes in, meets Belanger. I'd like to go back to the point about the absence of information about his relationship to the conspiracy in the years he was away. It strikes me that it's likely he was communicating with his daughter and either his emails or her emails were accessible to the government to try to come up with some proof on this. This isn't a question of the sufficiency. It's just, it's sort of odd that there's no evidence there. And I don't understand why there isn't, because the government could have found such evidence. I don't know that there was evidence. Could the government have done the two things that I just suggested? With ours, I don't know whether they issued subpoenas and so forth. When I asked the prosecutor, we had no evidence. Now, I'm not talking about the prosecutor. I'm talking about the investigators who put this case together for your office. Like I said, I haven't had any discussion with Agent Buchanan about this. I suspect there were efforts and there was no evidence. It doesn't mean that there weren't communications. I don't know how to respond to that because I don't want to certainly imply something else. Well, you've already responded more than I think you have authority to do. You simply don't know. Exactly. All right. It just seems like if there was pure radio silence, and I don't know if there was or was not, if there was just pure radio silence, I don't see, without him coming back, that you could say that he didn't disavow. Because he never said anything. So if he had just lived the rest of his life in California without ever having any contact, you're saying that because the conspiracy continued in Maine and he didn't specifically call up all the conspirators to say, I'm disavowing, or worse to that effect, that he would remain culpable. Well, he didn't remain in California. And it's the law that says passive cessation is insufficient. What he did was he came back. And these folks were really careful. This conspiracy lasted from 2001 all the way into 2014. And I don't know if a more scrupulous investigation would have unearthed something, but the fact that he came back looking at the full context of Mr. Belanger's conduct shows that he did not. There's nothing in the record that shows that he disavowed the goals of his family business. In fact, it shows to the contrary. Well, other than moving to the West Coast and getting as far away from him in the continental United States as he could. It said nothing about his family business. To get his life straightened out. It said nothing about his concerns about his family business, the ongoing continuity about his family business. And meanwhile, his daughter and others are maintaining the family business, into which, after this temporary hiatus to California, Mr. Belanger came back and dove a full stream ahead. And we have some of those same conspirators. At least seven of the conspirators. Right back in it, right into 2013, 2014, to the very end. I think Judge Thompson earlier suggested that this was a jury question and the jury was properly instructed by the court. Is that the government's bottom line? Yes. And again, even if the laws are there, too, if the court for some reason should have given a multiple conspiracy instruction, the court then looks to those three factors. And as in that Manuel Santiago case that Mr. Belanger cites, here the court properly instructed that the jury must find beyond a reasonable doubt, that the government proved beyond a reasonable doubt, the conspiracy charge, and leave that to not some other agreement or agreements. So we would submit, even under those three factors, even assuming there was sufficient evidence, and I think the court got it right that there's no factual basis to find multiple conspiracies here, it still wouldn't warrant a versatile error here, particularly where, again, the appellant argued his points to the jury. Notwithstanding, the jury didn't buy the defense theories, which doesn't mean that the court abuses discretion about the client in the request for discretion. With that, unless the court has further questions or concerns, we'd ask for your time. I'd like to briefly address some of the appellee's arguments. With regard to whether or not the government, in its closing argument, said either and or, or, I don't think it's dispositive as to whether that was an error. Clearly, the government's argument, if you look at the transcript, says it focuses on derailing the train. And it's not derailing the train, I would argue, to withdraw, to secede from the... What I'm arguing is that Belanger effectively withdrew from the conspiracy. That he pulled this conspiracy as he was leaving, and more importantly, he actually left and took himself out for a number of years. But the government's argument clearly is suggesting that you have to derail the train. And if you listen to the government's argument today, the appellee's argument, they say, well, the conspiracy was still going. So I guess what that means is even if he withdrew, the government is sort of arguing that that's not enough. Still, that he's got to derail the train, and that's not the state of the law. Going further, the appellee argued that mere cessation, passive cessation, isn't enough. Well, if you look at the record, that's not all Mr. Belanger did. It's not as if he just continued living and continued doing what he was doing. He did make statements, co-conspirators testified, that he was leaving to start a new life, and that he was getting hot or something to that, things were getting hot and he had to leave. These are statements that he made that clearly indicate that he intended to leave and stop doing what he was doing. Can his re-involvement, though, be seen as a reasonable inference that he had not disavowed? With the record being void of any sort of involvement in the meantime since he left, may I finish? Yes. Thank you. Any sort of involvement in the meantime where he left from somewhere between five and nine years, and he was away, I think the only inference that's reasonable is that Mr. Belanger may have entered into a new conspiracy, started a drug trade. With the same people who were there before, who kept on going while he was gone? Kept on going, different sources, doing different things that he wasn't involved in, wasn't having anything to do with or directing. I think it's a dangerous precedent. Thank you.